DAVID J. LUJAN
LUJAN & WOLFF LLP
Attorneys at Law
Suite 300, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone: (671) 477-8064/5
Fascimile: (671) 477-5297 (LAWS)

*Attorneys for Plaintiff*
*L.J.A.*

**RECEIVED**
**OCT 23 2018**
DISTRICT COURT OF GUAM
HAGÅTÑA, GUAM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF GUAM

| | |
|---|---|
| L.J.A., <br><br> Plaintiff, <br><br> v. <br><br> ROMAN CATHOLIC ARCHBISHOP OF AGANA, a Corporation sole; CAPUCHIN FRANCISCANS; CAPUCHINS FRANCISCANS PROVINCE OF ST. MARY; CAPUCHIN FRANCISCANS CUSTODY OF STAR OF THE SEA; DOE ENTITIES 1-5; and DOE-INDIVIDUALS 6-50, inclusive, <br><br> Defendants. | CIVIL ACTION NO. **18-00040** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff L.J.A. ("L.J.A.") files this Complaint ("the Complaint") for damages based on prior sexual abuse against Defendants Archbishop of Agana, a corporation sole, Capuchin Franciscans, Capuchin Franciscans Province of St. Mary, Capuchin Franciscans Custody of Star of the Sea, and DOES 1-50 ("Defendants").

## I.
## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

2. This Court has personal jurisdiction over this matter because Defendants purposefully availed themselves to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in this state.

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, L.J.A. is an adult resident of Guam.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Defendant Archbishop of Agana, also known as Archdiocese of Agana ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy, and as such constitutes a citizen of a foreign country for purposes of diversity jurisdiction. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

6. At all times relevant hereto, and upon information and belief, the Capuchin Franciscans, the Capuchin Franciscans Province of St. Mary, and the Capuchin Franciscans Vice Province Custody of Star of the Sea (collectively referred to herein as the "Capuchins"), are a religious order of priests, brothers, and friars, who serve various Catholic positions throughout the United States, including positions in Guam. In or about 1939, the Capuchin Franciscans began their missions on Guam. The Capuchin Franciscans are divided into geographic areas called provinces, and Defendant Capuchin Franciscans Province of St. Mary, is one of those geographic areas, with its headquarters in the State of New York. In or about 1952, Guam was assigned to the Capuchin Franciscans Province of St. Mary. By the early 1980s, there were almost a dozen Chamorros (the indigenous people of Guam) in the Capuchin Franciscan Order, either as priests, brothers or friars. At all times relevant hereto, and upon information and belief, the Capuchin Franciscans Province of St. Mary, regularly assigned Capuchin Brothers to Guam, and acted as an agent of the Capuchin Franciscans, whose main headquarters is in Rome, Italy, and the Capuchin Franciscans Province of St. Mary was under its direction, supervision, and jurisdiction. In or about 1982, the Capuchin Franciscans established the Guam community as the Star of the Sea, a Vice Province of the Capuchin Franciscans Province of St. Mary. Upon

2

information and belief, the Capuchin Franciscans had authority and control over both the Capuchin Franciscans Province of St. Mary and Capuchin Franciscans Vice Province Custody of Star of the Sea, including Father George Maddock and the other Capuchin Priest, Brothers, and Friars in that province. Upon further information and belief, the Capuchin defendants participated in, if not directly assigned Father George Maddock to serve the Agana Archdiocese in Guam, and the Capuchin defendants materially benefited from that assignment. The Capuchins are responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

7. Upon information and belief, the Agana Archdiocese and Capuchins had joint responsibility (including but not limited to the spiritual care) for parishes on Guam, including the Yona Parish, during all relevant times.

8. At all times relevant hereto, Father Geroge Maddock ("Maddock"), now deceased, was an individual and an agent of the Agana Archdiocese and specifically a Capuchin Priest in Guam. Maddock became a Capuchin in 1955 and was ordained as a Catholic Priest in 1964. Maddock's first assignment on Guam where he worked in parishes and schools. In or about September 30, 2018, Maddock died around the age of 81 years old. If not deceased, Maddock would have been individually responsible and liable, in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

9. Defendant-entities named herein as DOES 1-5, inclusive, are or, at all times relevant hereto, were insurance companies that provided general liability coverage and/or excess level liability coverage pursuant to policies issued to the Capuchins, Agana Archdiocese, and/or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and/or affiliated entities of the Capuchins, Agana Archdiocese and/or Roman Catholic Church outside of Guam whose true names and capacities are unknown to L.J.A. who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6-50 assisted, aided and abetted and/or conspired with Maddock and/or other members of the Agana Archdiocese and/or the Capuchins to conceal, disguise, cover up, and/or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and / or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

3

10. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

11. At the time L.J.A. was sexually abused by Maddock, Defendants knew or should have known that Maddock posed a threat of foreseeable harm to L.J.A. and other children, but they failed to take reasonable steps to protect L.J.A. from that harm.

## III.
## INTRODUCTORY ALLEGATIONS

A. **Culture of Sexually Predatory Behavior**

12. Since the inception of the priesthood many centuries ago, becoming a Catholic priest has required numerous vows to be taken among them a vow of celibacy, obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, nuns, and entities that utilized the services of priests and nuns, to a high status in the community, which has induced parents to entrust their children to the care of priests and likewise induced children to submit to the commands and will of priests.

13. The creation of the ritual of altar boy service as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which sexually predatory priest would gain access to young boys and such access was disguised in the form of privileged opportunities by which the church invited certain young boys to serve as altar boys, an opportunity that was viewed as a respectable and distinguished role for a young boy in the community and gave the boy status of wearing liturgical apparel during church services and working side by side with the priests.

14. Further disguising the scheme to have sexual access to young boys was the ritual of requiring altar boys to spend the night at the church rectory, ostensibly to facilitate preparation for the following morning church services. By presenting the overnight requests in this manner, priests routinely gained the approval of parents; and oftentimes the sexual abuses occurred during the night in their beds at the priests' residences. These seemingly routine practices of having altar boys stay overnight served the predatory priests

with a steady supply of victims under the auspices and pretense of formal church protocol, which allowed the Church to continually operate a veritable harem of young boys who were readily available to pedophiles who utilized the stature of the church into deceiving the community to regard them as high-level officials.

15. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within Defendants Agana Archdiocese and Capuchins and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura of prestige that was inculcated in the community and which caused Catholic parishioners to place the highest level of confidence and trust in the church and its clergy. This internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests and higher officials in the Agana Archdiocese and Capuchins whereby they all understood and agreed to remain quiet about each other's sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victim's parents or guardians and law enforcement authorities, in order to protect the offenders and the Agana Archdiocese and Capuchins, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

16. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese and Capuchins, and which aided and abetted such sexually predatory and abusive practices by priests by knowingly tolerating such actions, failing to manage the Agana Archdiocese and Capuchins to prevent sexual misconduct, and engaging in actions to protect and shield priests through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests.

17. These sexually predatory norms were also an integral part of the long-term relationship between the Agana Archdiocese and the Capuchins which fostered an environment conducive to the sexual abuse of young boys on Guam and exploited the trust placed in the church by the community of Guam, while the Agana Archdiocese and the Capuchins tolerated and remained willfully blind to the rampant sexual abuse that was perpetrated on an ongoing basis.

//

//

5

## B. Sexual Abuse Inflicted on Plaintiff L.J.A.

18. L.J.A. was raised in a religious family. Throughout his life, L.J.A.'s parents were devout Catholics and attended mass on a regular basis.

19. As a young child L.J.A. became an altar boy at the St. Francis of Assisi Catholic Church ("Yona Parish").

20. In or about 1978 or 1979, around the age of nine (9) or ten (10) years old, L.J.A. was sexually abused by Maddock, who was a Capuchin Priest at the Yona Parish during this time period.

21. On numerous occasions, Maddock would take L.J.A. and the other altar boys to swim at the beach after Sunday mass.

22. One day, while at the beach, Maddock took L.J.A. to the deep part of the water and allowed L.J.A. to climb on his back because L.J.A. was still learning how to swim. While in the deep part of the water, Maddock removed L.J.A.'s shorts and began to masturbate him.

23. On several occasions, Maddock would also force L.J.A. to remove his pants and using his hands Maddock would spank L.J.A. on his bare butt.

24. This incident affected L.J.A.'s performance as an altar boy. He walked around in fear and had anxieties about seeing Maddock. Although he tried his best to avoid him, whenever he did see him walking around or when they made eye contact, L.J.A. became frightened.

25. Upon information and belief, other priests and representatives of the Capuchins and the Agana Archdiocese, including Archbishop Anthony S. Apuron and other individuals named herein as Doe defendants, were aware of the sexual abuse committed by Maddock and deliberately remained quiet and withheld such information from third parties including victim's parents or guardians and law enforcements authorities, in order to protect Maddock, the Agana Archdiocese and the Capuchins, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

26. At all times relevant hereto, Maddock, prior to his death, sexually abused and molested L.J.A. when L.J.A. was a minor and committed such acts while serving as a Capuchin Priest in the Yona Parish, in his capacity as an agent and employee of the Agana Archdiocese and the Capuchins, which are vicariously liable for his actions.

27. The Agana Archdiocese, Capuchins, and DOES 1-50, inclusive, knew that Maddock had sexually abused and molested L.J.A., and rather than reporting the matter to law enforcement and without intervening so as to prevent Maddock from engaging in additional instances of sexual abuse, and without seeking to have Maddock acknowledge and take responsibility for his wrongful actions, they assisted Maddock with the specific purpose or design to keep Maddock's misconduct hidden and secret; to hinder or prevent Maddock's apprehension and prosecution; and to protect the Capuchins, Agana Archdiocese, as well as the Roman Catholic church as an international institution.

28. To this day, the Agana Archdiocese, Capuchins, and DOES 1-50 have never contacted L.J.A., L.J.A.' family, or children they know Maddock had sexual contact or sexual conduct with. The Agana Archdiocese, Capuchins, and DOES 1-50 have been content that any other children that were sexually abused by Maddock while he was serving as a Capuchin Priest, will remain affected by guilt, shame and emotional distress.

29. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in pertinent part as follows:
> (a) A person is guilty of child abuse when:
> (1) he subjects a child to cruel mistreatment; or
> (2) having a child in his care or custody or under his control, he:
>     \*    \*    \*
> (B) subjects that child to cruel mistreatment; or
> (C) unreasonably causes or permits the physical or, emotional health of that child to be endangered

30. Under 19 GCA § 13101, the following relevant definitions are provided:
>    \*    \*    \*
> (b) Abused or neglected child means a child whose physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of the person(s) responsible for the child's welfare;
>    \*    \*    \*
> (d) Child means a person under the age of 18 years;
>    \*    \*    \*
> (t) Harm to a child's physical health or welfare occurs in a case where there exists evidence of injury, including but not limited to:
>    \*    \*    \*
> (2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or
>
> (3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

31. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

> (o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

32. Under 9 GCA § 25.10(a)(8), "sexual contact" is defined as follows:

> (8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

33. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

> (a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
> (1) that other person is under fourteen (14) years of age;
> (2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit

34. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, ... clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ....

## IV.
## FIRST CAUSE OF ACTION

### Child Sexual Abuse
### [Against All Defendants]

35. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Defendants Agana Archdiocese, Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon L.J.A. by Maddock. Public policy dictates that Defendants should be held responsible for Maddock's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

37. Maddock, prior to his death, committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in sexual contact with L.J.A. when L.J.A. was under fourteen (14) years of age.

38. Maddock, prior to his death, also committed the offense of Child Abuse, as set forth in 9 GCA § 31.30, by subjecting L.J.A., who was a child at the time pursuant to 19 GCA § 13101(d) and was under the care, custody or control of Maddock, to cruel mistreatment and unreasonably causing or permitting the physical or emotional health of L.J.A. to be endangered.

39. Maddock, prior to his death, committed by his sexual abuse the tort of assault, by demonstrating an unlawful intent to inflict an immediate injury on the person of L.J.A. then present, causing L.J.A. to be in fear of personal harm including sexual abuse, and as a direct and proximate result causing L.J.A. to suffer general and special damages. By engaging in this conduct, Maddock acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

40. Maddock, prior to his death, committed by his sexual abuse the tort of intentional infliction of emotional distress. Maddock's acts and conduct in sexually abusing L.J.A. were extreme and outrageous. By engaging in such acts and conduct, Maddock intended to cause, or had reckless disregard of the probability of causing, L.J.A. to suffer severe emotional distress, including but not limited to great pain of mind and body, shock, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life. As an actual and proximate result of Maddock's extreme and outrageous acts and conduct, L.J.A. suffered and continues to suffer severe emotional distress. As a direct and proximate result of Maddock's acts and conduct, L.J.A. suffered general and special damages. By engaging in this conduct, Maddock acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

41. As a direct and proximate consequence of Maddock's misconduct, L.J.A. was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Maddock, who was responsible for the child's welfare. Moreover, as Maddock's misconduct constitutes the commission of one or more criminal offenses, L.J.A. has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because L.J.A. was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA)

42. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of L.J.A. arose from and was incidental to Maddock's agency and employment with the Agana Archdiocese and the Capuchins, and while Maddock, was acting within the scope of his agency and employment with the Agana Archdiocese and the Capuchins at the time he committed the acts of sexual abuse, which were foreseeable to Defendants.

43. Defendants ratified and/or approved of Maddock's sexual abuse by failing to adequately investigate, discharge, discipline and/or supervise Maddock and other priests known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Maddock's sexual abuse; failing to intervene to prevent ongoing and/or further sexual abuse; by failing to report the sexual abuse as required under 19 GCA § 13201(b); by allowing Maddock to continue in service as a Capuchin Priest working for the Agana Archdiocese and the Capuchins.

44. Despite the pretense of policies and procedures to investigate and address instances of child sexual abuse by priests, Defendants in fact implemented such policies and procedures for no other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy, including child molesting clergy, rather than the protection of children. Such hypocritical conduct by Defendants has served to systematically encourage, perpetuate and promote sexually abusive conduct by priests in the Agana Archdiocese and the Capuchins.

45. Defendants either had actual knowledge of Maddock's sexual abuse of L.J.A., or could have and should have reasonably foreseen that Maddock would commit sexual abuse to L.J.A. in the course of his employment as a Capuchin Priest in the Yona Parish, as an agent and employee of the Agana Archdiocese and the Capuchins.

46. As a direct and proximate result of the Defendants' above-described conduct, L.J.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

47. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

# V.
# SECOND CAUSE OF ACTION

**Negligence**
**[Against All Defendants]**

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. Defendants Agana Archdiocese, Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect L.J.A. when he was entrusted to Maddock's care by L.J.A.' parents and/or guardians. L.J.A.' care, welfare, and/or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of L.J.A. As such, Defendants owed L.J.A., as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed L.J.A. the higher duty of care that adults dealing with children owe to protect them from harm.

50. By virtue of his unique authority and position as a Roman Catholic and Capuchin Priest, Maddock was able to identify vulnerable victims and their families upon which he could perform such sexual abuse; to manipulate his authority to procure compliance with his sexual demands from his victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a Capuchin Priest, Maddock had unique access to a position of authority within Roman Catholic families like the family of L.J.A. Such access, authority, and reverence were known to the Defendants and encouraged by them.

51. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Maddock's sexually abusive and exploitative propensities and/or that Maddock was an unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to L.J.A., the children entrusted to Defendants' care would be vulnerable to sexual abuse by Maddock.

52. Defendants breached their duty of care to the minor L.J.A. by allowing Maddock to be in the company of minor children, including L.J.A., without supervision; by failing to adequately supervise, or negligently retaining Maddock whom they permitted and enabled to have access to L.J.A.; by failing to properly investigate; by failing to inform or concealing from L.J.A., L.J.A.'s parents, guardians, or law enforcement officials that Maddock was or may have been sexually abusing minors; by failing to provide a safe environment; by holding out Maddock to L.J.A., L.J.A.'s parents or guardians, and to the community of

11

Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the facade of normalcy Maddock's contact with L.J.A. and/or with other minors who were victims of Maddock, and deliberately concealed and disguised the sexual abuse committed by Maddock.

53. As a direct and proximate result of the Defendants' above–described conduct, L.J.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

54. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

## VI.
## THIRD CAUSE OF ACTION

### Negligent Supervision
### [Against All Defendants]

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Defendants Agana Archdiocese, Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of both Maddock and minor child, L.J.A.; to use reasonable care in investigating Maddock; and to provide adequate warning to L.J.A., L.J.A.' family, and to families of other children who were entrusted to Maddock, of Maddock's sexually abusive and exploitative propensities and unfitness.

57. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Maddock's sexually abusive and exploitative propensities and/or that Maddock was an unfit agent. Despite such knowledge, Defendants negligently failed to supervise Maddock in his position of trust and authority as a Capuchin Priest, where he was able to commit the wrongful acts against L.J.A. alleged herein. Defendants failed to provide reasonable supervision of Maddock, failed to use reasonable care in investigating Maddock, and failed to provide adequate warning to L.J.A. and L.J.A.' family regarding Maddock's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

58. As a direct and proximate result of the Defendants' above-described conduct, L.J.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

59. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

## VII.
## FOURTH CAUSE OF ACTION

### Negligent Hiring And Retention
### [Against All Defendants]

60. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Defendants Agana Archdiocese, Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and/or retain Maddock in light of his sexually abusive and exploitative propensities.

62. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Maddock's sexually abusive and exploitative propensities and/or that Maddock was an unfit agent. Despite such knowledge and/or an opportunity to learn of Maddock's misconduct, Defendants negligently hired and retained Maddock in his position of trust and authority as a Capuchin Priest, where he was able to commit the wrongful acts against L.J.A. alleged herein. Defendants failed to properly evaluate Maddock's application for employment by failing to conduct necessary screening; failed to properly evaluate Maddock's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of Maddock's sexual abuse to appropriate authorities. Defendants negligently continued to retain Maddock in service as a Capuchin Priest, working for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein.

63. As a direct and proximate result of the Defendants' above-described conduct, L.J.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

64. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

### Breach of Fiduciary Duty And/Or Confidential Relationship
### [Against All Defendants]

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66. By holding Maddock out as a qualified Capuchin Priest and a person of stature and integrity within the Catholic Archdiocese, Defendants Agana Archdiocese, Capuchins, and DOES 1-50, together with Maddock himself, invited, counseled, encouraged and induced the Catholic community of Guam, including children and parents or guardians of children, and particularly parents or guardians of children who were parishioners and members of the Catholic church volunteering their services, to have trust and confidence in the Agana Archdiocese, the Capuchins, and their priests, and to entrust their children to the company of priests and specifically to Maddock, including allowing their children to be alone with Maddock without supervision and to reside at a church facility with Maddock to learn about the priesthood. Through such actions, Defendants collectively created and entered into a fiduciary and/or confidential relationship with its parishioners, including Catholic parents or guardians and their children, and in particular, children who provided services to the Agana Archdiocese and the Capuchins, and resided at a church facility to learn about the priesthood. Accordingly, Defendants collectively created and entered into a fiduciary and/or confidential relationship specifically with the minor child L.J.A.

67. Through such fiduciary and/or confidential relationship, Defendants collectively caused parents or guardians to entrust their children to priests, and specifically to Maddock, including the parents of L.J.A.,

which resulted in L.J.A. residing at church facility with Maddock to learn about the priesthood, resulting in the subject acts of sexual abuse described herein.

68. Defendants collectively breached their fiduciary and/or confidential relationship with the minor child L.J.A. by violating the trust and confidence placed in them by parishioners and specifically by the minor child L.J.A., and by engaging in the wrongful acts described in this Complaint.

69. As a direct and proximate result of the Defendants' above–described conduct, L.J.A. has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

70. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

## IX.
## SIXTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**
**[Against All Defendants]**

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. The acts and conduct of the Agana Archdiocese, Capuchins, and DOES 1-50 in providing Maddock, a sexual predator to children, with direct access to children including L.J.A., and refusing to report or stop his sexual abuses, were extreme and outrageous.

73. By engaging in such acts and conduct, the Agana Archdiocese, Capuchins, and DOES 1-50 intended to cause, or had reckless disregard of the probability of causing, L.J.A. to suffer severe emotional distress, including but not limited to great pain of mind and body, shock, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

74. As an actual and proximate result of this extreme and outrageous acts and conduct, L.J.A. was sexually abused and suffered and continues to suffer severe emotional distress.

75. As a direct and proximate result of these acts and conduct, L.J.A. suffered general and special damages.

76. By engaging in the conduct described herein, the Agana Archdiocese, Capuchins, and DOES 1-50 acted with malice, oppression, and/or fraud, entitling L.J.A. to exemplary and punitive damages.

## X.
## REQUEST FOR RELIEF

WHEREFORE, Plaintiff L.J.A. requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;
2. For costs and fees incurred herein;
3. Attorneys' fees, as permitted by law; and
4. For other such and further relief as the Court may deem just and proper.

## X.
## DEMAND FOR JURY TRIAL

Plaintiff L.J.A., through his counsel, David J. Lujan, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Federal Rule of Civil Procedure 48(a).

Respectfully submitted this 22 day of October, 2018.

**LUJAN & WOLFF LLP**

By: _____
**DAVID J. LUJAN**
*Attorneys for Plaintiff L.J.A.*

| | |
|---|---|
| 1 | **VERIFICATION** |
| 2 | L.J.A. declares and states that she is the PLAINTIFF in the foregoing COMPLAINT; that she has |
| 3 | read said COMPLAINT and knows the contents thereof to be true and correct, except as to the matters which |
| 4 | may have been stated upon his information and belief; and as to those matters, she believes them to be true. |
| 5 | |
| 6 | I declare under penalty of perjury under the laws of the United States, this 23rd day of October, |
| 7 | 2018, that the foregoing is true and correct to the best of my knowledge. |
| 8 | |
| 9 | _L.J.A._ <br> L.J.A. |